UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KEVIN O'NEILL on Behalf of Himself and All Others Similarly Situated, | CASE NO.: |
| Plaintiff<br>vs. | CLASS ACTION COMPLAINT |
| EQUIFAX INC.; and DOES 1-10, Inclusive, | |
| Defendants. | <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Kevin O'Neill ("Plaintiff"), by and through his attorneys, brings this action on behalf of himself and the Class[1] against Equifax, Inc. ("Equifax" or "Defendant"). Plaintiff makes the following allegations upon information and belief (except those allegations as to the Plaintiff or his attorneys, which are based on personal knowledge), based upon an investigation that is reasonable under the circumstances, which allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

## NATURE OF THE CASE

1.       We are well into the "big data" age. Consumers' personally identifiable information ("PII") is being gathered, maintained, analyzed, purchased, and sold by governments, politicians, and corporations to learn about us, predict our behavior, and sell us things. PII is akin to the DNA of a person's online digital self – it is perpetually valuable not only to corporations, but to cyberthieves. Accordingly, a

---

[1]       The "Class" is defined in ¶¶28-29 below.

robust statutory framework has been enacted to protect and safeguard consumers' PII.

2.      Unfortunately, despite these consumer protection laws, one thing is now clear: Equifax is concerned only about the value of collecting PII, not protecting it. Plaintiff brings this class action against Equifax for its colossal and reckless failure to secure and safeguard the PII of Plaintiff and about 143 million U.S. consumers whose PII was subject to cybertheft from Equifax's unsecure files from about mid-May through July 2017 (the "Data Breach"). Plaintiff also brings this class action against Equifax because of its egregious conduct in its handling of the Data Breach, including its intentional failure to timely notify consumers of the breach.

3.      Considering what is at stake, Equifax's nonchalant yet lofty attitude about the Data Breach is astonishing. Equifax has acknowledged it discovered the Data Breach on July 29, 2017 (perhaps even earlier), but it intentionally delayed public-wide notification to consumers until the after-market hours on September 7, 2017. Instead, it has been reported that Equifax executives sold at least $1.8 million worth of Equifax shares on August 2, 2017, which is four days after the date it acknowledges it discovered the Data Breach, but more than a month before it notified the consuming public of the Data Breach. Equifax intentionally chose to leave consumers vulnerable so it could capitalize on its own recklessness and attempt to immunize itself from liability.

4.      Equifax's conduct is particularly breathtaking considering the type of PII subject to the cybersecurity incident. The PII accessed primarily includes names, Social Security Numbers, birth dates, addresses, and, in some instances, driver's license numbers. Equifax also admitted that credit card numbers for about 209,000

consumers were accessed, along with other highly sensitive information for another 182,000 consumers obtained from credit dispute documents.

5.     Cyberthieves do not have just bits and pieces of PII; they now have all of it in one place – reportedly one of the most valuable data heists in history. Unlike a stolen credit card, which can simply be canceled and reissued, you cannot change your name, birth date, or Social Security Number. This is a treasure trove of data for cyberthieves to be used for unlimited years in the future. Not only will hackers be able to use the PII to unlawfully access consumers' financial accounts, such as checking and savings accounts and investment accounts, but it can be used for total identity theft. The PII can be used, for example, to file fraudulent tax returns, file fraudulent medical expense claims, open credit accounts, medical ID theft, rent apartments, apply for utility services, or even obtain a loan and buy a house in your name without you knowing. The injuries suffered by Plaintiff and the Class cannot be overstated.

6.     The Data Breach occurred because Equifax willfully failed to implement adequate safety measures to safeguard Plaintiff's and the Class's PII. Equifax obtains and stores some of the most sensitive personal and financial information of hundreds of millions of consumers, many without their knowledge, from various creditors and other sources. Equifax had a duty to adequately protect this highly sensitive information by, among other things, implementing available procedures and services to avoid a breach of this magnitude. Equifax could have prevented this Data Breach. Data breaches have occurred before at Equifax, and at other companies, including a major data breach at one of Equifax's primary competitors, Experian. Even though Equifax knew this information was valuable to hackers and Equifax was vulnerable to cyber-attacks, Equifax breached its duty by

failing to take adequate security precautions, resulting in one of the largest and most valuable data breaches in history.

7.     To redress the harms suffered, Plaintiff, on behalf of himself and the Class, brings claims for: (1) negligence; (2) negligent violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681o; (3) willful violation of the FCRA, 15 U.S.C. §1681n; (4) violation of California's Customer Records Act, Civil Code §§1798.80, *et seq.*; (5) violation of California's Unfair Competition Law, Business & Professions Code §§17200, *et seq.*; and (6) declaratory and injunctive relief.

## THE PARTIES

### Defendants

8.     Equifax is a multi-billion dollar publicly traded corporation headquartered in Atlanta, Georgia with its principal place of business located at 1550 Peachtree Street, NW, Atlanta Georgia 30309. Equifax organizes, assimilates, and analyzes data on more than 820 million consumers and more than 91 million businesses worldwide, and its database includes employee data contributed from more than 7,100 employers.[2] Equifax operates or has investments in 24 countries in North America, Central America, South America, Europe, and the Asia Pacific region.[3] Equifax operates through various subsidiaries and affiliated entities including Equifax Information Services, LLC, and Equifax Consumer services, LLC. Each of these subsidiaries and affiliated entities acted in concert with, or, in the alternative, with the knowledge and approval of and/or as the agent of, Equifax to perpetrate the acts described herein.

---

[2]     Equifax Company Profile, http://www.equifax.com/about-equifax/company-profile/ (last visited September 10, 2017).

[3]     *Id*.

9.      Plaintiff is unaware of the true names and legal capacities of DOE Defendants 1-10, and therefore sue those Defendants by these fictitious names. Plaintiff will seek leave of the Court to amend this Complaint to allege true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges that each DOE Defendant is in some way responsible for the acts, omissions, and damages alleged in this Class Action Complaint.

**Plaintiff**

10.      Plaintiff is now, and at all relevant times was, a resident of Bakersfield, California. Plaintiff beings this action in his individual capacity and on behalf of the Class. As set forth below, Plaintiff is one of over 140 million Americans affected by Equifax's Data Breach. Plaintiff learned of the Data Breach like millions of other Americans, through news reports. Plaintiff went to Equifax's webpage to check whether his personal information and credit was compromised. He entered his identifying information and received a response telling him that his personal information "may have been impacted." Given the vague nature of these words, Equifax's webpage did not inform Plaintiff whether his information was compromised, but did encourage him to enroll in Defendant's credit-monitoring service product, "TrustedID Premier."

**JURISDICTION AND VENUE**

11.      The Court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiff and Equifax are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs. The Court also has jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2), because the suit is a class action, the parties are minimally diverse, and the amount in controversy exceeds $5,000,000, excluding interest and costs. The Court has

supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

12.     This Court has personal jurisdiction over Equifax because Equifax maintains its principal place of business in Georgia, regularly conducts business in Georgia, and has sufficient minimum contacts in Georgia. Equifax has intentionally availed itself of the laws and markets of this District through the promotion, sale, marketing, and/or distribution of their products and services.

13.     Venue is proper in this district under 28 U.S.C. §1391(a)(1), (a)(2) and (b) because Equifax's principal place of business is in this District and because a substantial part of the events or omissions giving rise to this claim occurred in this district. Venue is also proper under 18 U.S.C. §1965(a), because Equifax transacts a substantial amount of its business in this District.

## FACTUAL BACKGROUND

14.     Equifax is one of three major nationwide credit reporting agencies that collect historical personal and financial data of U.S. consumers used to rate and score consumers' credit-worthiness. Equifax possesses data on more than 820 million consumers and more than 91 million businesses worldwide, and its database includes employee data from more than 7,100 employers. The data includes the most sensitive personal and financial information of hundreds of millions of consumers, many without their knowledge, because Equifax collects the data from banks, credit card companies, lenders, and retailers who furnish or report information about consumers to the credit reporting agencies such as Equifax. The data provided to, and collected by, Equifax includes information on loans, loan payments, credit limits, rent and utility payments, current and past addresses, and employment history.

15.    Equifax was aware of the severity of securing and protecting consumer's PII. Equifax disclosed in its 2016 annual report:

> The Federal Trade Commission's Act ("FTC Act") prohibits unfair methods of competition and unfair or deceptive acts or practices. We must comply with the FTC Act when we market our services, such as consumer credit monitoring services offered through our Global Consumer Solutions unit. The security measures we employ to safeguard the personal data of consumers could also be subject to the FTC Act, and failure to safeguard data adequately may subject us to regulatory scrutiny or enforcement action ….[4]

16.    Equifax also acknowledged in its 2016 annual report its potential liability pursuant to, *inter alia*, the FCRA, the Gramm-Leach-Bliley Act, and the Credit Repair Organizations Act. Equifax also acknowledged that numerous states have enacted requirements similar to the federal FCRA. Indeed, California is one such state, which enacted the Customer Records Act, Civil Code §§1798.80, *et seq*.

17.    In the face of robust statutes and regulations governing consumer data and protection, on or about mid-May and July 2017, due to its reckless (or at best negligent) vulnerability, Equifax experienced one of the largest data security breaches in history (the "Data Breach").  Hackers accessed PII such as names, Social Security Numbers, birth dates, addresses, credit card numbers, and the numbers of some drivers' licenses of over 140 million U.S. consumers.

18.    Even though, according to Equifax, it first discovered the Data Breach on July 29, 2017, Equifax waited until September 7, 2017 to announce for the first time that its database storing Plaintiff's and the Class' PII had been hacked and accessed by unauthorized third parties, subjecting Plaintiff and the Class to threats

---

[4]    Annual Report, Dec. 31, 2016 (Form 10-K) (https://www.sec.gov/Archives/edgar/data/33185/000003318517000008/efx10k20161231.htm).

of identity theft and potential harm to their credit – a threat that that could very well be lifelong.

19.     In the days just after the Data Breach was discovered, however, and more than a month before it was disclosed to the public, Equifax executives sold nearly two million dollars' worth of company stock.

20.     Beginning on or about September 7, 2017, at or about the same time of its intentionally delayed disclosure of the Data Breach, Equifax provided a webpage on its website representing to consumers that they could check whether they were potentially affected by the Data Breach. After entering one's last name and last six digits of one's Social Security Number, the site provides one of two messages. One result states in relevant part, "Based on the information provided, we believe that your personal information *may* have been impacted by this incident." (Emphasis added.) The other result states in relevant part, "Based on the information provided, we believe that your personal information was not impacted by this incident." This means there is no way for consumers to tell if they were really impacted. Both results also encourage consumers to sign up for Equifax's own product, a one-year credit monitoring service, that will supposedly protect them "free of charge," but only for a limited time. The harm incurred by Plaintiff and the Class extends far beyond twelve months, and Equifax's so-called twelve-month credit monitoring is not an acceptable remedy.

21.     Equifax's goal with this webpage is not to protect the consumer or bring them critical information but instead, incredibly, to get consumers to sign up for its product "TrustID Premier" and agree to waive their rights to seek certain remedies. Because of an enormous public outcry, Equifax has since updated its terms of service by removing an unconscionable class action waiver clause and clarified that the

"credit file monitoring and identity theft protection that we are offering as part of this cybersecurity incident does not waive any rights to take legal action."[5]

22.    In addition to its obligations under state and federal laws, Equifax owed an implied duty to Plaintiff and the Class to exercise reasonable care in protecting PII from being compromised, accessed, stolen, and/or misused by unauthorized persons. Equifax made representations and promises that it would protect Plaintiff's and the Class's PII. Equifax's website states in relevant part:

> We have built our reputation on our commitment to deliver reliable information to our customers (both businesses and consumers) and to protect the privacy and confidentiality of personal information about consumers. We also protect the sensitive information we have about businesses. Safeguarding the privacy and security of information, both online and offline, is a top priority for Equifax.[6]

23.    Equifax breached its duty to properly protect Plaintiff's and the Class's PII from reasonably foreseeable threats in violation of various state and federal laws, as well as common law. Equifax's breach of duty directly and proximately caused the Data Breach, harming Plaintiff and the Class. Equifax's failure to timely notify and adequately disclose the Data Breach to Plaintiff and the Class further breached its duty to, and further harmed, Plaintiff and the Class. To date, Equifax has not bothered to directly notify Plaintiff and the Class of the Data Breach.

24.    Equifax did not obtain Plaintiff's and the Class's consent to disclose their PII to any other person as required by applicable law and industry standards.

25.    As a direct and proximate cause of Equifax's wrongful conduct, Plaintiff and the Class have had their privacy rights violated and are subject to, and must take steps to protect against, serious threats in the foreseeable future including

---

[5]      https://www.equifaxsecurity2017.com/ (last visited Sept. 12, 2017).
[6]      Equifax Privacy, http://www.equifax.com/privacy/ (last visited Sept. 10, 2017).

but not limited to identity theft, credit damage, and fraud. The immediate, imminent, and/or continuing harm to Plaintiff and the Class includes, without limitation:

      (a)    Theft of Plaintiff's and the Class' PII, including their financial information;

      (b)    The loss of privacy, never to be recovered;

      (c)    Diminution in value of Plaintiff's and the Class's PII;

      (d)    Unauthorized charges on their money accounts;

      (e)    Identity theft and other misuse of PII on the black market;

      (f)    Costs associated with the time, loss of productivity, and enjoyment of life associated with ameliorating, mitigating, and otherwise dealing with the consequences of the Data Breach;

      (g)    Costs of purchasing sufficient identity-theft-prevention, credit monitoring services, and credit-repair services;

      (h)    Lower credit scores because of inquiries of credit scores due to the Data Breach;

      (i)    Credit holds for security reasons; and

      (j)    Other forms of economic harm and actual damages arising out of the theft of Plaintiff's and the Class's PII.

## CLASS ACTION ALLEGATIONS

26.    Plaintiff realleges and incorporates herein by reference each allegation in the preceding and subsequent paragraphs.

27.    Plaintiff brings this action on behalf of himself individually and other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23.

28.    Plaintiff seeks to represent the following Class:

(a)    <u>Nationwide Class</u>: All persons residing in the United States whose PII was acquired from Equifax by unauthorized persons in the data breach announced by Equifax on or around September 7, 2017 (the "Nationwide Class").

(b)    <u>California Sub-Class</u>: All persons residing in California whose PII was acquired from Equifax by unauthorized persons in the data breach announced by Equifax on or around September 7, 2017 (the "California Class").

29.    Collectively, members of the Nationwide Class and California Class will be referred to as the "Class." Plaintiff is a member of the Class.

30.    Excluded from The Class are Equifax, its officers and directors, families, and legal representatives, heirs, successors, or assigns, and any entity in which Equifax has a controlling interest, and the Court and its employees, officers, and relatives.

31.    Plaintiff reserves the right to amend or modify the class definitions in connection with his motion for class certification, as a result of discovery, at trial, or as otherwise allowed by law.

32.    Plaintiff brings this action on behalf of himself and all others similarly situated because there is a well-defined community of interest in the litigation and the proposed Class members are easily ascertainable.

**Numerosity**

33.    The potential members of the Class are so numerous that joinder of all the members is impracticable. While the precise number of members of the Class has not been determined, Plaintiff is informed and believes the Class consists of millions of consumers.

34.    Based on information and belief, Equifax's records and data evidence the exact number and location of the Class.

## Commonality and Predominance

35.    There are questions of law and fact common to the Class that predominate over any questions affecting only individual class members. These common questions of law and fact include, without limitation:

(a)    Whether Defendant owed a duty to Plaintiff and the Class to adequately protect their PII;

(b)    Whether Defendant owed a duty to Plaintiff and the Class to provide timely and accurate notice of the Data Breach;

(c)    Whether Defendant negligently failed to utilize reasonable procedures to ensure protection and security of Plaintiff's and the Class's PII;

(d)    Whether Defendant breached its duty to Plaintiff and the Class to protect their PII;

(e)    Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach;

(f)    Whether Defendant should have known that it was vulnerable to a Data Breach;

(g)    Whether Defendant's conduct was the proximate cause of the Data Breach;

(h)    Whether Defendant violated the FCRA;

(i)    Whether Defendant violated California's Customer Records Act;

(j)    Whether Defendant violated California's Unlawful Competition Law; and

(k)    Whether Plaintiff and the Class have been harmed and the proper measure of relief.

## Typicality

36.     The claims of Plaintiff are typical of the claims of the Class. Plaintiff and all members of the Class sustained injuries and damages arising out of and caused by Defendant's common course of conduct in violation of laws and statutes as alleged herein.

## Adequacy of Representation

37.     Plaintiff will fairly and adequately represent and protect the interest of the Class. Counsel who represents Plaintiff are competent and experienced in litigating large consumer class actions.

## Superiority of Class Action

38.     A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of the Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Each member of the Class has been damaged and is entitled to recovery because of Defendant's uniform unlawful practices described herein. There are no individualized factual or legal issues for the Court to resolve that would prevent this case from proceeding as a class action. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT I

### Negligence
### (On Behalf of Plaintiff and the Nationwide Class)

39.    Plaintiff hereby alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

40.    By accepting Plaintiff's and the Class's PII, Defendant assumed a duty to use reasonable care to protect and secure Plaintiff and Class's PII from being compromised, stolen, or accessed by unauthorized persons. Defendant also had a duty to timely and adequately inform Plaintiff and the Class of the Data Breach.

41.    Defendant breached its duty of care owed to Plaintiff and the Class by failing to provide adequate security and protection of their PII.

42.    Defendant breached its duty of care owed to Plaintiff and the Class by not timely or adequately notifying Plaintiff and the Class about the Data Breach after it occurred, as described in this Complaint.

43.    As a direct and proximate cause of Defendant's failures to secure and protect Plaintiff's and the Class's PII and failure to timely or adequately notify the Plaintiff and the Class of the Data Breach, Plaintiff and the Class were injured. Such injuries include threats of identity theft, damage to credit scores, time and expense of taking steps to monitor and repair any issue, and the nuisance and loss of time associated with addressing current and future consequences of the Data Breach.

## COUNT II

### Negligent Violation of the Fair Credit Reporting Act, 15 U.S.C. §1681o
### (On Behalf Plaintiff and the Nationwide Class)

44.    Plaintiff hereby alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

45.     Equifax is a "consumer reporting agency" as defined under the FCRA because, for monetary fees, Equifax regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties. 15 U.S.C. §1681a(f).

46.     Plaintiff's and the Class's PII that was accessed by unauthorized persons in the Equifax Data Breach is a "consumer report" as defined by the FCRA, because it was a communication of information bearing on Plaintiff's and the Class's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which was used or expected to be used in whole or in part for the purpose of serving as a factor in establishing Plaintiff's and the Class's eligibility for credit, insurance, employment, or any other purpose authorized by the act. 15 U.S.C. §1681a(d)(1).

47.     Equifax is required to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. §1681b of the FCRA. 15 U.S.C. §1681e(a).

48.     Equifax negligently failed to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. §1681b of the FCRA.

49.     Plaintiff and the Class suffered actual damages because of Defendant's violation of the FCRA. Such damages include threats of identity theft, damage to credit scores, time and expense of taking steps to monitor and repair any issue, and the nuisance and loss of time associated with addressing current and future consequences of the Data Breach.

50.     Plaintiff and the Class are entitled to compensation for their actual damages as described above, and attorneys' fees and costs, pursuant to 15 U.S.C. §1681o(a).

## COUNT III

### Willful Violation of the Fair Credit Reporting Act, 15 U.S.C. §1681n
### (On Behalf of Plaintiff and the Nationwide Class)

51.    Plaintiff hereby alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

52.    Equifax is a "consumer reporting agency" as defined under the FCRA because, for monetary fees, Equifax regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties. 15 U.S.C. §1681a(f).

53.    Plaintiff's and the Class's PII that was accessed by unauthorized persons in the Equifax Data Breach is a "consumer report" as defined by the FCRA, because it was a communication of information bearing on Plaintiff's and the Class's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which was used or expected to be used in whole or in part for the purpose of serving as a factor in establishing Plaintiff's and the Class's eligibility for credit, insurance, employment, or any other purpose authorized by the act. 15 U.S.C. §1681a(d)(1).

54.    Equifax is required to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. §1681b of the FCRA. 15 U.S.C. §1681e(a).

55.    Equifax willfully failed to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. §1681b of the FCRA. Equifax knew of the risk of being targeted by hackers given the value of Plaintiff's and the Class's PII and the importance of protecting and safeguarding Plaintiff's and the Class's PII, as Defendant expressly stated the importance and priority of safeguarding such PII, as described above.

15

56.     Defendant's willful conduct allowed the Data Breach to occur causing unauthorized access to Plaintiff's and the Class's PII without permissible purposes under the FCRA.

57.     Plaintiff and the Class are entitled to recover actual damages "or damages of not less than $100 and not more than $1,000," punitive damages, costs of the action, and reasonable attorneys' fees. 15 U.S.C. §1681n(a)(1), (2) and (3).

## COUNT IV

### Violation of California's Customer Records Act, California Civil Code §1798.80, *et seq*. (On Behalf of Plaintiff and the California Class)

58.     Plaintiff hereby alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

59.     "[T]o ensure that personal information about California residents is protected," the California legislature enacted Civil Code §1798.81.5, which requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

60.     Defendant is a business that owns, maintains, and licenses personal information about Plaintiff and the Class, within the meaning of Civil Code §1798.81.5.

61.     Defendant violated Civil Code §1798.81.5 by failing to implement reasonable measures to protect Plaintiff's and the Class' PII.

62.     Businesses that own or license computerized data that includes personal information, including social security numbers, are required to notify California residents when their PII has been acquired (or has reasonably believed to have been

acquired) by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay …." Civil Code §1798.82. Among other requirements, the security breach notification must include "the types of personal information that were or are reasonably believed to have been the subject of the breach." Civil Code §1798.82.

63.     Defendant is a business that owns or licenses computerized data that includes personal information as defined by Civil Code §1798.82.

64.     Plaintiff's and the Class's PII includes personal information as covered by Civil Code §1798.82.

65.     Because Equifax reasonably believed that Plaintiff's PII was acquired by unauthorized persons during the Equifax Data Breach, Equifax had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Civil Code §1798.82.

66.     By failing to disclose the Data Breach in a timely and accurate manner, Equifax violated Civil Code §1798.82.

67.     As a direct and proximate result of Defendant's violations of the Civil Code §§1798.81.5 and 1798.82, Plaintiff and the California Class suffered damages, as described above.

68.     Plaintiffs and California Class seek relief under Civil Code §1798.84, including, but not limited to, actual damages, penalties, injunctive relief, and reasonable attorney's fees and costs.

## COUNT V

### Violation of California's Unfair Competition Law, Business & Professions Code §§17200, *et seq*. (On Behalf of Plaintiff and the California Class)

69.     Plaintiff hereby alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

70.     California's Unfair Competition Law, Business & Professions Code §§17200, *et seq*. (the "UCL"), prohibits acts of unfair competition, which means and includes any "unlawful, unfair or fraudulent business act or practice" and any act prohibited by California Business & Professions Code §17500.

71.     Equifax engaged in unlawful activity prohibited by the UCL, Business & Professions Code §§17200, *et seq*. The actions of Defendants as alleged within this Complaint constitute unlawful and unfair business practices with the meaning of the UCL, Business & Professions Code §§17200, *et seq*.

72.     Equifax has engaged in the following unlawful activities:

        (a)     Engaging in Negligent and Negligent Per Se conduct, in violation of common law and section 5 of the FTC and the FCRA; and

        (b)     Violation of the California's Consumer Records Act, Civil Code §§1798.81, *et seq*.

73.     Equifax's activities also constitute unfair practices in violation of the UCL, Business & Professions Code §§17200, *et seq*., because Equifax's practices violate the above noted laws, and/or violate an established public policy, and/or the practice is immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiff and the Class.

74.     Equifax also violated the UCL's prohibition against fraudulent business acts or practices through its misrepresentations regarding the transaction of

18

purportedly notifying consumers of whether they had been affected by the Data Breach that had a tendency to mislead the public and with intent to induce reliance of Plaintiff and the Class.

75.     Because of Equifax's violations of the noted laws, Plaintiff and the Class have suffered injury-in-fact and have lost money or property because of Equifax's practices. Plaintiff and the Class are entitled to restitution, an injunction, declaratory, and other equitable relief against such unlawful practices to prevent future damage for which there is no adequate remedy at law.

76.     Plaintiff is also entitled to and hereby claims attorneys' fees and costs, pursuant to the private attorney general theory doctrine (Code of Civil Procedure §1021.5), and any other applicable provision for attorney fees and costs, based upon the violation of the underlying public policies.

## COUNT VI

### Declaratory and Injunctive Relief
### (On Behalf of Plaintiff and the Nationwide Class California Class)

77.     Plaintiff hereby alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

78.     The Court is authorized to enter a judgment declaring the rights and legal relations of the parties, restrain unlawful acts, and grant further relief as necessary.

79.     Plaintiff and the Class entered into an implied contract that required Equifax to protect Plaintiff's and the Class's PII from invasion of privacy. Equifax owed a duty of care to Plaintiff and the Class to adequate secure and protect their PII.

80.     Equifax currently possesses, and for the foreseeable future will possess, Plaintiff's and the Class' PII, and there exists a continued threat that Plaintiff's and

the Class's PII remains vulnerable while in the possession of Equifax. Equifax has failed, and continues to fail, its duties and obligations of securing and protecting Plaintiff's and the Class's PII.  Equifax's security measures were, and continue to be, inadequate.

81.   An actual controversy has arisen in the wake of Equifax's data beach regarding its common law, statutory, and implied contractual duties to safeguard Plaintiff's and the Class's PII.

82.   Plaintiff seeks a judgment declaring, among other things, the following:

(a)   Equifax's existing data security does not currently comply with its legal obligations and duties of care;

(b)   Equifax breached its legal obligations and duties by failing to employ reasonable security measures to protect and secure Plaintiff's and the Class's PII;

(c)   Equifax must make all reasonable efforts to cure its Data Breach of legal obligations and duties by, among other things:

i.   Consistent with industry standards, engage a fully independent third-party auditor to test its system for weaknesses and upgrade any found weaknesses;

ii.   Develop, audit, review, maintain and practice legally compliant procedures regarding how to appropriately respond to a data breach;

iii.   Regularly test its system for security vulnerabilities;

iv.   Meaningfully educate its customers about the threat they face because of a cyber-attack while their PII is in Equifax's possession; and

v.   Other equitable and declaratory relief to be determined.

83.   If declaratory and injunctive relief is not issued, Plaintiff and the Class will suffer irreparable injury, because no other alternative remedy exists to remedy

the current and outstanding harm. The risk of another similar Data Breach is real, immediate, and substantial. There is no undue hardship to Equifax because of the requested declaratory and injunctive relief. Rather, the requested relief will benefit the public interest by securing the public's sensitive PII and allow truthful, fair information to be disclosed to the public to make informed decisions. Equifax's alleged unlawful conduct has impacted the public at large. Accordingly, declaratory and injunctive relief should be issued.

## PRAYER FOR RELIEF

84.    WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment against Defendant as follows:

A.    That the Court determine that this action may be maintained as a class action with the named Plaintiff appointed as the Class representative;

B.    For the attorneys appearing on the above-caption to be named Class counsel;

C.    For nominal, actual, and compensatory damages, according to proof at trial;

D.    For statutory damage, according to proof at trial;

E.    For punitive damages, according to proof at trial;

F.    For an order enjoining Equifax from continuing the unlawful practices described in this Complaint;

G.    For an order directing Equifax to provide victims of its conduct with equitable relief in the form of credit monitoring, credit repair, identity theft insurance, and monetary restitution;

H.    For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

85.     Plaintiff, on behalf of himself and the Class, demands a trial by jury on all issues so triable.

Respectfully submitted this 13th day of September, 2017.

LAW OFFICES OF DAVID A BAIN, LLC

*/s/ David A. Bain*
David A. Bain
1230 Peachtree Street, NE
Suite 1050
Atlanta, GA  30309
Tel: (404) 724-9990
Fax: (404) 724-9986
dbain@bain-law.com

HAEGGQUIST & ECK, LLP
ALREEN HAEGGQUIST (221858)
AARON M. OLSEN (259923)
225 Broadway, Suite 2050
San Diego, CA  92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878

LAGUARDIA LAW
ERIC A. LAGUARDIA (272791)
402 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 655-4322
Facsimile: (619) 655-4344

Attorneys for Plaintiff and the Proposed Class